1   COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
2   JONATHAN E. BEHAR (174916)
  EX KANO S. SAMS II (192936)
3   MICHAEL F. GHOZLAND (223032)
  9601 Wilshire Blvd., Suite 510
4   Los Angeles, CA 90210
  Telephone: 310/859-3100
5   310/278-2148 (fax)
  jbehar@csgrr.com
6   exkanos@csgrr.com
  mghozland@csgrr.com
7     – and –
  JOY ANN BULL (138009)
8   X. JAY ALVAREZ (134781)
  655 West Broadway, Suite 1900
9   San Diego, CA 92101
  Telephone: 619/231-1058
10   619/231-7423 (fax)
  joyb@csgrr.com
11   jaya@csgrr.com

12   Counsel for Lead Plaintiff

13           UNITED STATES DISTRICT COURT

14           CENTRAL DISTRICT OF CALIFORNIA

15               WESTERN DIVISION

| | |
|---|---|
| In re BASIN WATER, INC., SECURITIES LITIGATION | Master File No. CV-07-08359-GW(FFMx) |
| This Document Relates To: | CLASS ACTION |
| ALL ACTIONS. | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS |
| | DATE: August 13, 2009 |
| | TIME: 8:30 a.m. |
| | COURTROOM: The Honorable George H. Wu |

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................... 1

II.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS
      ACTION SETTLEMENTS ....................................................................... 3

III.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE .......... 6

      A.    The Settlement Is the Product of Arm's-Length Negotiations ............ 6

      B.    Reaction of the Settlement Class Supports Approval of the
            Settlement ................................................................................... 7

      C.    The Settlement Appropriately Balances the Risks of Litigation
            and the Benefit to the Settlement Class of a Certain Recovery ........... 8

            1.    The Solvency of Basin and the Likelihood of Recovery
                  On a Litigated Judgment Support Settlement .......................... 10

            2.    Continued Litigation Poses Substantial Risks in
                  Establishing Liability and Damages ...................................... 12

            3.    Balancing the Certainty of an Immediate Recovery
                  Against the Expense and Likely Duration of Trial Favors
                  Settlement ..................................................................... 17

      D.    The Parties Have Engaged in Sufficient Pretrial Discovery and
            Proceedings to Identify the Strengths and Weaknesses of Their
            Cases .......................................................................................... 19

      E.    The Recommendations of Experienced Counsel Favor
            Approval of the Settlement ............................................................. 20

      F.    The Risks of Maintaining the Class Action Through Trial
            Support the Settlement ................................................................... 20

IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ............... 21

V.    CONCLUSION .................................................................................... 22

# TABLE OF AUTHORITIES

Page

## CASES

*AUSA Life Ins. Co. v. Ernst & Young,*
    39 Fed. Appx. 667 (2d Cir. 2002) ................................................................16

*Backman v. Polaroid Corp.,*
    910 F.2d 10 (1st Cir. 1990) .........................................................................16

*Beecher v. Able,*
    575 F.2d 1010 (2d Cir. 1978).......................................................................21

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
    603 F.2d 263 (2d Cir. 1979) ........................................................................16

*Boyd v. Bechtel Corp.,*
    485 F. Supp. 610 (N.D. Cal. 1979).......................................................5, 8, 17

*Bryant v. Avado Brands, Inc.,*
    100 F. Supp. 2d 1368 (M.D. Ga. 2000),
    *rev'd on other grounds sub nom. Bryant v. Dupree,*
    252 F.3d 1161 (11th Cir. 2001).......................................................................9

*Bullock v. Adm'r of Estate of Kircher,*
    84 F.R.D. 1 (D.N.J. 1979) ............................................................................17

*Chatelain v. Prudential-Bache Sec.,*
    805 F. Supp. 209 (S.D.N.Y. 1992)...............................................................10

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)............................................................................5

*DSAM Global Value Fund v. Altris Software, Inc.,*
    288 F.3d 385 (9th Cir. 2002)........................................................................12

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) ...........................15

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939
    (9th Cir. 1981) ...........................................................................4, 5, 18, 20

**Page**

*Fisher Bros. v. Cambridge-Lee Indus., Inc.,*
 630 F. Supp. 482 (E.D. Pa. 1985)..........................................................20

*Girsh v. Jepson,*
 521 F.2d 153 (3d Cir. 1975) ......................................................8, 17

*Hughes v. Microsoft Corp.,*
 No. C98-1646C, 2001 U.S. Dist. LEXIS 5976
 (W.D. Wash. Mar. 26, 2001) ........................................................5

*In re "Agent Orange" Prod. Liab. Litig.,*
 611 F. Supp. 1396 (E.D.N.Y. 1985)..............................................21

*In re Chambers Dev. Sec. Litig.,*
 912 F. Supp. 822 (W.D. Pa. 1995) ................................................18

*In re Chicken Antitrust Litig. Am. Poultry,*
 669 F.2d 228 (5th Cir. 1982).........................................................21

*In re Corrugated Container Antitrust Litig.,*
 643 F.2d 195 (5th Cir. 1981) .........................................................21

*In re Gulf Oil/Cities Serv. Tender Offer Litig.,*
 142 F.R.D. 588 (S.D.N.Y. 1992).....................................................22

*In re Ikon Office Solutions, Inc., Sec. Litig.,*
 194 F.R.D. 166 (E.D. Pa. 2000) ...........................................8, 10, 21

*In re Mego Fin. Corp. Sec. Litig.,*
 213 F.3d 454 (9th Cir. 2000)...............................................8, 19, 21

*In re Metawave Commc'ns Corp. Sec. Litig.,*
 298 F. Supp. 2d 1056 (W.D. Wash. 2003).......................................9

*In re Mfrs. Life Ins. Co. Premium Litig.,*
 No. MDL 1109, 1998 U.S. Dist. LEXIS 23217
 (S.D. Cal. Dec. 21, 1998) .............................................................16

*In re Silicon Graphics Sec. Litig.,*
 183 F.3d 970 (9th Cir. 1999)......................................................8, 9

- iii -

**Page**

*In re Warner Commc'ns Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir.
    1986) ................................................................................................8, 19, 21

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs
    v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ......................................4, 21

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,*
    364 F. Supp. 2d 980 (D. Minn. 2005) ............................................17

*Kirkorian v. Borelli,*
    695 F. Supp. 446 (N.D. Cal. 1988)................................................20

*Lewis v. Newman,*
    59 F.R.D. 525 (S.D.N.Y. 1973)........................................................8

*Malchman v. Davis,*
    761 F.2d 893 (2d Cir. 1985) ............................................................5

*Marshall v. Holiday Magic, Inc.,*
    550 F.2d 1173 (9th Cir. 1977)........................................................3

*McGonigle v. Combs,*
    968 F.2d 810 (9th Cir. 1992).........................................................12

*Milstein v. Huck,*
    600 F. Supp. 254 (E.D.N.Y. 1984)............................................5, 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................6, 7, 8, 20

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982)................................................*passim*

*Petrovic v. AMOCO Oil Co.,*
    200 F.3d 1140 (8th Cir. 1999)......................................................21

*Republic Nat'l Life Ins. Co. v. Beasley,*
    73 F.R.D. 658 (S.D.N.Y. 1977)......................................................8

**Page**

*Robbins v. Koger Props.*,
    116 F.3d 1441 (11th Cir. 1997)..................................................................15, 16

*S.C. Nat'l Bank v. Stone*,
    749 F. Supp. 1419 (D.S.C. 1990) ..................................................................22

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ......................................................................4, 10

*Util. Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) ..........................................................................3

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ..........................................................................3

*W. Va. v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079
    (2d Cir. 1971) ...............................................................................................16

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ........................................................................5, 21

*White v. NFL*,
    822 F. Supp. 1389 (D. Minn. 1993) ..............................................................22

*Winkler v. NRD Mining, Ltd.*,
    198 F.R.D. 355 (E.D.N.Y.), *aff'd sub nom. Winkler v. Wigley*,
    242 F.3d 369 (2d Cir. 2000) ..........................................................................16

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §77z-1 ..................................................................................8, 9, 13, 19
    §78j(b) ..................................................................................9, 12, 13, 14

Page

Federal Rules of Civil Procedure
     Rule 9(b)..............................................................................13
     Rule 23.................................................................................21
     Rule 23(e) .........................................................................1, 3

17 C.F.R.
     §240.10b-5..........................................................................12

**SECONDARY AUTHORITIES**

Stephanie Plancich, Ph.D and Svetlana Starykh, *2008 Trends in Securities Class Actions* (NERA Dec. 2008)..........................................15

# I.   PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Counsel submit this memorandum in support of Lead Plaintiff's motion for final approval of the settlement of this litigation for $7,000,000 in cash and approval of the Plan of Allocation of settlement proceeds.  The terms of the settlement are set forth in the Stipulation of Settlement dated as of March 12, 2009 (the "Stipulation").[1]  The settlement is the result of arm's-length settlement negotiations with the substantial assistance of former Judge Daniel Weinstein, a highly respected mediator with extensive experience in the mediation of complex class actions, and Jed D. Melnick, Esq.

The settlement was achieved only after hard-fought litigation and an extensive informal investigation by Lead Counsel.  Lead Counsel thoroughly reviewed and analyzed all publicly available information regarding Basin Water, Inc. ("Basin"), including, but not limited to, its Securities and Exchange Commission ("SEC") filings, financial statements, press releases, and conference calls.  Considerable resources were also devoted to locating and interviewing witnesses with knowledge of Basin and Lead Plaintiff's allegations.  Lead Counsel, with the assistance of in-house and outside private investigators, located potential witnesses, including numerous former Basin employees, and interviewed 8 potential witnesses.  Lead Counsel also worked with expert consultants in the areas of damages, materiality, and loss causation and researched the law pertinent to the Lead Plaintiff's claims and the potential defenses thereto.  Lead Counsel prepared and filed detailed complaints setting forth Lead Plaintiff's allegations and subsequently opposed Defendants' motions to dismiss those complaints.

---

[1]   All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation.

1    From the outset, Defendants adamantly denied any liability and asserted they
2  possessed absolute defenses to Lead Plaintiff's claims.   During settlement
3  negotiations, Lead Counsel made it clear that, while they were prepared to fairly
4  assess the strengths and weaknesses of Lead Plaintiff's case, they would continue to
5  litigate rather than settle for less than fair value. The Lead Plaintiff and Lead Counsel
6  persisted until they achieved an amount that they thought was fair under the
7  circumstances of this case.

8    Lead Counsel, who are well-respected and experienced in prosecuting securities
9  fraud class actions, have concluded that the settlement is a good result and is in the
10 best interest of the Settlement Class.  This conclusion is based on all of the factors
11 present here, including the substantial risk, expense, and uncertainty in continuing the
12 litigation through Defendants' pending motion to dismiss, expected summary
13 judgment motions, trial, and probable appeal; Basin's financial condition; the relative
14 strengths and weaknesses of the claims and defenses asserted; a complete analysis of
15 the evidence obtained to date and the legal and factual issues presented; past
16 experience in litigating complex actions similar to the present action; and the serious
17 disputes between the parties concerning the merits and damages.[2]

18    For all of the reasons discussed herein and in the Sams Declaration, it is
19 respectively submitted that the settlement is eminently fair, reasonable, and adequate
20 to the Settlement Class and should be approved by the Court.[3]  Moreover, the Plan of

21

22 [2]   The Court is respectfully referred to the accompanying Declaration of Ex Kano
23 Sams II in Support of Motion for (1) Final Approval of Class Action Settlement and
   Plan of Allocation of Settlement Proceeds; and (2) Award of Attorneys' Fees and
24 Expenses ("Sams Declaration") for a more detailed history of the litigation, the efforts
   of counsel, and the factors bearing on the reasonableness of the settlement and Plan of
25 Allocation.

26 [3]   The Settlement Class consists of all Persons who purchased or otherwise
   acquired Basin publicly traded securities between November 14, 2006 and August 8,
27 2008.  Excluded from the Settlement Class are Defendants, any entity in which any
   Defendant has or had a controlling interest or that is a parent or subsidiary or is
28 controlled by any Defendant, Defendants' officers and directors, including any Person

1  Allocation of settlement proceeds was developed by Lead Plaintiff's damage
2  consultants, tracks the theory of damages asserted, is necessarily fair, reasonable and
3  adequate, and should be approved by the court.

4  **II.    THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS
5          ACTION SETTLEMENTS**

6      It is well established in the Ninth Circuit that "voluntary conciliation and
7  settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil*
8  *Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class action suits readily lend
9  themselves to compromise because of the difficulties of proof, the uncertainties of the
10 outcome, and the typical length of the litigation. It is beyond question that "there is an
11 overriding public interest in settling and quieting litigation," and this is "particularly
12 true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th
13 Cir. 1976); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437,
14 443 (9th Cir. 1989). In deciding whether to approve the settlement of a stockholders'
15 class action under Federal Rule of Civil Procedure 23(e), the court must find that the
16 proposed settlement is "fair, adequate and reasonable."[4] The Ninth Circuit has set
17 forth factors which may be considered in evaluating the fairness of a class action
18 settlement:

19       Although Rule 23(e) is silent respecting the standard by which a
20       proposed settlement is to be evaluated, the universally applied standard
21       is whether the settlement is fundamentally fair, adequate and reasonable.

22

---

23 who was an officer or director during the Settlement Class Period, Defendants'
24 affiliates, legal representatives, heirs, predecessors, successors or assigns, and
   members of the Defendants' immediate families. Also excluded from the Settlement
25 Class are those Persons who timely and validly request exclusion from the Settlement
   Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action
26 (the "Notice").

27 [4]    *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d
   1173, 1178 (9th Cir. 1977).

28

1
2
3
4
5
6
7
8
9

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted). *Accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. In exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit defines the limits of the inquiry to be made by the court in the following manner:

- 4 -

1   Therefore, the settlement or fairness hearing is not to be turned into a
2   trial or rehearsal for trial on the merits. Neither the trial court nor this
3   court is to reach any ultimate conclusions on the contested issues of fact
4   and law which underlie the merits of the dispute, for it is the very
5   uncertainty of outcome in litigation and avoidance of wasteful and
6   expensive litigation that induce consensual settlements. The proposed
7   settlement is not to be judged against a hypothetical or speculative
8   measure of what **might** have been achieved by the negotiators.

9   *Id.* (emphasis in original). Applying these criteria demonstrates that this settlement
10  warrants the Court's approval.

11  Moreover, "[t]he recommendations of plaintiffs' counsel should be given a
12  presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D.
13  Cal. 1979); *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the
14  case approved the settlement after hard-fought negotiations is entitled to considerable
15  weight").[5] The presumption of reasonableness in this matter is fully warranted
16  because the settlement is the product of arm's-length and mediator assisted
17  negotiations. *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS
18  5976, at *17, *21 (W.D. Wash. Mar. 26, 2001). Here, it is the considered judgment of
19  experienced counsel after extensive hard-fought settlement negotiations that the
20  settlement is a very good result for the Settlement Class and should be approved.

21  In sum, the Court is now asked to ascertain whether the settlement is within a
22  range that responsible and experienced attorneys could accept, considering all relevant
23  risk factors of litigation. *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982);
24  *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974). This range recognizes
25  the uncertainties of law and fact in any particular case and the concomitant risks and

26

27  [5]   *Accord Malchman v. Davis*, 761 F.2d 893, 903 (2d Cir. 1985); *Milstein v. Huck*, 600 F. Supp. 254, 262 (E.D.N.Y. 1984).

28

- 5 -

1   costs necessarily inherent in taking any litigation to completion. Therefore, courts
2   have taken a liberal approach toward approval of class action settlements, recognizing
3   that the settlement process involves the exercise of judgment and that the concept of
4   "reasonableness" can encompass a broad range of results. "'In most situations, unless
5   the settlement is clearly inadequate, its acceptance and approval are preferable to
6   lengthy and expensive litigation with uncertain results.'" *Nat'l Rural Telecomms.*
7   *Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).

8   **III.   THE SETTLEMENT IS FAIR, REASONABLE, AND
         ADEQUATE**
9

10         **A.     The Settlement Is the Product of Arm's-Length
                 Negotiations**
11

12         Lead Counsel have many years of experience in litigating securities fraud class
13   actions and have negotiated hundreds of other class action settlements that have been
14   approved by courts throughout the country. Defendants are also represented by highly
15   capable and very experienced counsel who zealously defended their clients. As a
16   result, the settlement was reached after arm's-length negotiations by experienced
17   counsel on both sides, each with a good understanding of the strengths and
18   weaknesses of each party's respective claims and defenses. During the litigation, the
19   parties agreed to participate in mediation and met with former San Francisco Superior
20   Court Judge Daniel Weinstein and Jed D. Melnick on February 19, 2009. Prior to the
21   mediation, Lead Counsel prepared and submitted a detailed mediation statement
22   discussing the strengths of Lead Plaintiff's claims against the Defendants. During the
23   course of the mediation, the parties debated the merits of their respective claims and
24   defenses. Lead Counsel zealously advanced Lead Plaintiff's positions and were fully
25   prepared to continue to litigate rather than accept a settlement that was not in the best
26   interest of the Settlement Class. During the mediation, the parties reached an
27   agreement-in-principle to settle the litigation. The agreement-in-principle was
28   followed by negotiations regarding the detailed terms of the settlement, including the

1  scope of releases, establishment of opt-out thresholds, and the form and content of the
2  notice to be sent to the Settlement Class.   As a result of the negotiations and
3  mediation, there can be no question that the settlement was the result of hard fought
4  arm's-length negotiations and is "not the product of fraud or overreaching by, or
5  collusion between, the negotiating parties." *Officers for Justice*, 688 F.2d. at 625.

6
### B.   Reaction of the Settlement Class Supports Approval of the Settlement
7

8       The Notice was sent to more than 18,500 potential Members of the Settlement
9  Class. A Summary Notice of the settlement was also published in *The Wall Street*
10 *Journal* and a copy of the Stipulation and related exhibits, including the Notice and
11 Proof of Claim form, were posted on the Claims Administrator's website.   *See*
12 paragraphs 8, 10, and 11 to the Declaration of Carole K. Sylvester Re (A) Mailing of
13 the Notice of Pendency and Proposed Settlement of Class Action, the Proof of Claim
14 and Release Form and (B) Publication of the Summary Notice, submitted herewith.
15 The time period for objecting to the settlement will expire on July 27, 2009.  To date,
16 not a single objection to any aspect of the settlement, the Plan of Allocation or Lead
17 Counsel's request for an award of attorneys' fees and expenses has been received.[6]
18 This is an important factor in evaluating the fairness, reasonableness, and adequacy of
19 the settlement and supports approval.  Indeed, "[i]t is established that the absence of a
20 large number of objections to a proposed class action settlement raises a strong
21 presumption that the terms of a proposed class settlement action are favorable to the
22 class members." *Nat'l Rural*, 221 F.R.D. at 529.  The Settlement Class reaction to
23 date is strong evidence that Members of the Settlement Class overwhelmingly support
24 the settlement and Plan of Allocation.

25
26 _____

27 [6]     If any objections are received, Lead Counsel will address them in a reply brief.
28

C.   **The Settlement Appropriately Balances the Risks of Litigation and the Benefit to the Settlement Class of a Certain Recovery**

To determine whether the proposed settlement is fair, reasonable, and adequate, the court must balance against the continuing risks of litigation, the benefits afforded to members of the class and the immediacy and certainty of a substantial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd*, 485 F. Supp. at 616-17; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). In other words,

> "[t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'"

*Nat'l Rural*, 221 F.R.D. at 526 (citations omitted).

In the context of approving class action settlements, courts attempting to balance these factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *See also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977). This is even more so today in this post-Private Securities Litigation Reform Act of 1995 ("PSLRA") environment amid defendants' constant attempts to push the envelope and contours of the PSLRA. *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").

A balance of these factors in this case supports approval of the settlement, particularly in light of the risks presented by the PSLRA and the Ninth Circuit's decisions in *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999), and

1  its progeny.  The Ninth Circuit's decisions in *Silicon Graphics* and its progeny have
2  interpreted the PSLRA's heightened pleading standards in an expansive manner and
3  have established what is commonly accepted to be the most stringent standards of any
4  circuit to pleading a successful §10(b) claim.

5  While the Lead Plaintiff believes that the allegations pled in the complaint are
6  sufficiently detailed, there was a real risk that the Lead Plaintiff's claims would be
7  dismissed at the pleading stage because the stringent pleading standards make it very
8  difficult to plead a strong inference of scienter even in a case that involves significant
9  accounting manipulations, admitted false financial statements, and restatements. *See,*
10 *e.g.*, *In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1065-66
11 (W.D. Wash. 2003) (court dismissed with prejudice a case involving allegations of
12 significant accounting manipulations and restatements supported by information from
13 confidential witnesses).  As one court noted: "An unfortunate byproduct of the
14 PSLRA is that potentially meritorious suits will be short-circuited by the heightened
15 pleading standard." *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D.
16 Ga. 2000), *rev'd on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th
17 Cir. 2001).

18 Although Lead Counsel believe that the litigation has significant merit, they
19 recognize that they faced numerous risks and uncertainties and are well aware that
20 many other similar actions have been prosecuted in the belief that they were
21 meritorious, only to lose at the pleading stage, on summary judgment, at trial or on
22 appeal. The settlement recognizes the inherent risks of complex litigation involving a
23 panoply of difficult legal and factual issues.  As discussed herein and in the Sams
24 Declaration (at paragraphs 54 to 64), the risks of continued litigation when weighed
25 against the substantial and certain recovery for the Settlement Class confirms the
26 reasonableness of the settlement.  The settlement is unquestionably better than another
27 distinct possibility – little or no recovery for the Settlement Class.  Moreover, even if
28 the Lead Plaintiff was able to successfully prosecute this action through trial and all

1  appeals, there was no guarantee that a jury's verdict would have been more than the
2  settlement amount and it would have taken years before all appeals were settled and
3  the Settlement Class received any payment.

4              **1.    The Solvency of Basin and the Likelihood of Recovery**
5                      **On a Litigated Judgment Support Settlement**

6          Defendants ability to pay and plaintiff's ability to collect a higher recovery than
7  what might be obtained through trial must be considered when determining whether a
8  settlement is adequate.   The Ninth Circuit affirmed a district court's decision to
9  approve a class action settlement where the financial condition of the defendants and
10  their ability to respond to a large judgment was uncertain. *See Torrisi*, 8 F.3d at 1376.
11  In *Torrisi*, the Ninth Circuit found that this fact "predominates" over all others in
12  favor of the settlement because the corporation's financial condition was impaired at
13  the time the settlement was negotiated.  *Id.*  Other courts have held that uncertainty
14  with regard to the defendants' financial condition and plaintiff's ability to collect a
15  judgment strongly supports approval of a proposed settlement. *See, e.g.*, *Ikon*, 194
16  F.R.D. at 183 (defendants' inability to pay a greater sum supports approval of
17  settlement); *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y.
18  1992) (stating that the defendants' lack of significant assets and insurance coverage
19  made collection of a judgment uncertain and was "a significant factor in approving the
20  settlement").

21          Here, there is a significant risk that, absent this settlement, the Lead Plaintiff
22  would not be able to collect any sizeable judgment he obtained for the class against
23  the Defendants. At the time the parties participated in mediation, Basin had only $12
24  million in cash on hand and its stock was trading for approximately $0.70 per share.
25  The settlement amounts to over 80% of Basin's cash position and over 60% of its
26  current market capitalization.   Lead Plaintiff's concerns about Basin's financial
27  condition are reinforced by Basin's Form 10-K filing for the period ending December
28  31, 2008, which was filed with the SEC on March 31, 2009 and stated:

1   We have experienced significant negative cash flows from operating and
2   investing activities between 2006 and 2008, and we expect to use
3   additional cash for such activities for the foreseeable future.  Our net
4   losses incurred during the past two fiscal years ended December 31,
5   2008 and 2007 amounted to $32.5 million and $18.3 million,
6   respectively.  Unless and until we are able to generate sufficient revenues
7   from our system sales and contract services, we expect such losses to
8   continue in the future. . . .

9   *   *   *

10   Our independent auditors' report for the year ended December 31, 2008
11   includes an explanatory paragraph stating that our recurring losses from
12   operations and negative cash flows raise substantial doubt about our
13   ability to continue as a going concern.  If we are unable to obtain
14   additional financing on commercially reasonable terms, our business,
15   financial condition and results of operations will be materially and
16   adversely affected and we may be unable to continue as a going
17   concern. . . .  If we are unable to continue as a going concern, we may
18   elect or be required to seek protection from creditors by filing a
19   voluntary petition in bankruptcy or may be subject to an involuntary
20   petition in bankruptcy. . . .

21   In addition, the Individual Defendants do not have, in the aggregate, sufficient assets
22   to cover any sizeable plaintiff's judgment.  Therefore, the only viable source of
23   recovery from the Individual Defendants was their directors' and officers' insurance
24   policies.  Continuing defense costs would deplete this insurance and had the case
25   continued, all insurance proceeds would have likely been used to pay defense costs.
26   Consequently, if the Lead Plaintiff had continued to litigate and was able to obtain a
27   large judgment, he might not have been able to collect it.  Under these circumstances,
28   the proposed settlement is eminently reasonable.

- 11 -

### 2.   Continued Litigation Poses Substantial Risks in Establishing Liability and Damages

If the Lead Plaintiff survived Defendants' attacks on the pleadings, the Settlement Class faced serious obstacles to recovery, both with respect to liability and damages. The principle claims asserted in the litigation on behalf of the Settlement Class were based on §10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. To prevail on his §10(b) claims, the Lead Plaintiff would bear the burden of proving (a) a misstatement or omission, (b) of material fact, (c) made with scienter, (d) on which plaintiff relied, and (e) that caused loss. *McGonigle v. Combs*, 968 F.2d 810, 817 (9th Cir. 1992); *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 388 (9th Cir. 2002). Thus, the Lead Plaintiff would have to prove that Defendants were responsible for material misstatements or omissions of fact, that the Settlement Class relied upon Defendants' alleged misconduct, that Defendants acted with the requisite scienter, and that the Settlement Class suffered damages as a result of Defendants' conduct.

Lead Plaintiff's case centered on public statements made by Defendants during the Settlement Class Period about Basin's accounting for the unprofitable water services agreements and various other financial statements that the Lead Plaintiff alleges violates GAAP.

While the Lead Plaintiff believes that his claims are strong, establishing liability at trial would by no means be guaranteed. The Lead Plaintiff would seek to prove that Defendants' positive statements were material misrepresentations intertwined and tethered to Basin's reported earnings and revenue growth, and that Defendants knew Basin's publicly-reported results were false because despite the problematic contract terms following the release of Basin's 2006 results and the disclosure of its fourth quarter 2006 reserve, Defendants were not accounting for all contracts correctly and failed to include in the reserve material losses that would be incurred from certain water services agreements. The Lead Plaintiff would also seek to prove that even if

1  Defendants' statements could be construed as financial forecasts, they were
2  knowingly false when provided to the public.  Although the Lead Plaintiff believes
3  that his §10(b) claims are strong and the evidence adduced to date supports those
4  claims, he is aware that there were substantial obstacles to the achievement of a
5  significant judgment at trial.

6      Defendants have adamantly denied any liability and have asserted that they
7  possess solid defenses to Lead Plaintiff's allegations.  Defendants argued that the
8  complaint, at best, alleged mismanagement, negligence, misconduct or mere
9  recklessness and, thus, did not sufficiently plead scienter under the PSLRA and Rule
10  9(b) in this Circuit.  Defendants also asserted that the Lead Plaintiff did not plead facts
11  sufficient to establish Defendants' recklessness or actual knowledge, which are
12  requirements to adequately plead scienter in this Circuit.  Also in their motion to
13  dismiss, Defendants asserted that Lead Plaintiff failed to identify with adequate
14  particularity the basis of the confidential witness "sources."  Defendants also argued
15  that Lead Plaintiff failed to plead particularized facts giving rise to each allegation.  In
16  addition, Defendants argued that a number of the alleged false statements were either
17  true or forward-looking, and because they had disclosed the associated risks and
18  cautioned investors about them, they were shielded from liability under the PSLRA's
19  safe harbor provisions.

20      As discussed above, the case entailed a number of complex issues.  Presenting
21  these complex issues to a jury posed risks to the class's hopes for success at trial.
22  While the Lead Plaintiff would have presented expert testimony supporting his
23  allegations, Defendants undoubtedly would have called experts to contradict the Lead
24  Plaintiff's experts and opine that Defendants were not liable under applicable
25  securities laws.  Lead Counsel could not be certain that they would succeed in making
26  the jury believe Lead Plaintiff's experts or even understand these matters well enough
27  to reach a determination in the class's favor.

28

1       While Lead Counsel believe that the Lead Plaintiff has a strong case as to
2  liability, they recognize that a finding by a jury is never assured and that Defendants
3  had potential defenses to Lead Plaintiff's claims that could create significant risks to
4  the class's recovery.  As a result, the Lead Plaintiff faced the risks of establishing
5  liability posed by conflicting testimony and evidence.  Moreover, there was no
6  certainty that formal discovery would tend to support or disprove Lead Plaintiff's
7  allegations.

8       The risks of establishing liability posed by conflicting testimony and evidence
9  would be exacerbated by the following risks inherent in all shareholder litigation
10 under §10(b), including the unpredictability of a lengthy and complex jury trial – the
11 risk that witnesses could suddenly become unavailable or jurors could react to the
12 evidence in unforeseen ways; the risk that the jury would find that some or all of the
13 alleged misrepresentations and omissions were not material during part or all of the
14 Settlement Class Period; and the risk that the jury would find that Defendants
15 reasonably believed in the appropriateness of their actions at the time and that the
16 Lead Plaintiff failed to prove that Defendants acted with scienter.

17      If the Lead Plaintiff was to overcome the significant risks of proving liability,
18 he would still face the risks of proving damages.  The determination of damages is a
19 complicated and uncertain process involving conflicting expert testimony.  Expert
20 testimony could rest on many subjective assumptions, any of which could be rejected
21 by a jury as speculative or unreliable.  The Lead Plaintiff would have likely faced a
22 motion *in limine* by Defendants to preclude Lead Plaintiff's damage expert's
23 testimony under the *Daubert* test and risked a decision that a valuation model might
24 not be admissible in evidence.  If the Lead Plaintiff survived the *Daubert* motion, at
25 trial the loss causation and damage assessments of the Lead Plaintiff's and
26 Defendants' experts were sure to vary substantially, and in the end, this crucial
27 element at trial would be reduced to a "battle of experts."  Defendants' experts would
28 seek to show that the class's losses were caused by factors other than the alleged

1   fraud.  Defendants' loss causation arguments would have been bolstered by the
2   Supreme Court decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-47, 125
3   S. Ct. 1627, 1633-34, 161 L. Ed. 2d 577, 587-88 (2005).  The reaction of a jury to
4   such expert testimony is highly unpredictable and, in such a battle, Lead Counsel
5   recognize the possibility that a jury could be swayed by convincing experts for the
6   Defendants.  The Defendants would attempt to convince the jury to find that there
7   were no damages or that only a fraction of the amount of damages the Lead Plaintiff
8   asserted were causally related to the alleged false and misleading statements.  *See,*
9   *e.g.*, *Robbins v. Koger Props.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (finding no
10  loss causation and overturning $81 million jury verdict).

11       The Lead Plaintiff planned to present evidence at trial that the aggregate
12  damages were approximately $45 million, assuming that all significant liability and
13  damage issues would have been resolved in the class's favor up to that point in the
14  litigation.  Setting aside the possibility that actual provable damages could ultimately
15  have been a small fraction of Lead Plaintiff's preliminary damage analysis, courts
16  routinely approve settlements providing recoveries representing a small percentage of
17  the potential recovery.  "It is well-settled law that a cash settlement amounting to only
18  a fraction of the potential recovery will not *per se* render the settlement inadequate or
19  unfair."  *Officers for Justice*, 688 F.2d at 628.  In addition, the estimated recovery in
20  this case is higher than the average recovery in class action settlements.  A recent
21  study by National Economic Research Associates states that in 2008, the median ratio
22  of settlement value to investor losses was 2.7%.  *See* Stephanie Plancich, Ph.D and
23  Svetlana Starykh, *2008 Trends in Securities Class Actions*, at 14 (NERA Dec. 2008),
24  attached as Exhibit 2 to the Declaration of Joy Ann Bull in Support of Final Approval
25  of Class Action Settlement and Plan of Allocation of Settlement Proceeds and Lead
26  Counsel's Application for an Award of Attorneys' Fees and Expenses, submitted
27  herewith.  Therefore, when measured against the results in comparable cases, Lead
28  Counsel achieved a superior recovery for Settlement Class Members.

1    Moreover, even with a judgment in hand, there is no guarantee that a significant
2    judgment entered years down the road would be collectable. *See* discussion above
3    concerning Basin's financial solvency. Therefore, the amount of damages the class
4    would actually recover if successful at trial is uncertain.

5    As detailed herein and in the Sams Declaration, this action involves substantial
6    risks in proving liability and damages. There is no question that Defendants would
7    have raised every available argument to avoid an adverse judgment had litigation
8    continued. The defenses raised by Defendants had some possibility of success,
9    making the ultimate outcome difficult to discern. Thus, even if the case got past the
10   pleading stage and summary judgment, Lead Counsel's experience has taught them
11   how the above-mentioned factors can make the outcome of a trial extremely uncertain.
12   Moreover, even if the Lead Plaintiff prevailed at trial, risks to the class remain. For
13   example, in *Backman v. Polaroid Corp.*, 910 F.2d 10, 18 (1st Cir. 1990), the class
14   won a jury verdict and a motion for J.N.O.V. was denied, but on appeal the judgment
15   was reversed and the case dismissed. *See also W. Va. v. Chas. Pfizer & Co.*, 314 F.
16   Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter
17   how confident one may be of the outcome of litigation, such confidence is often
18   misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman*
19   *Kodak Co.*, 603 F.2d 263, 309 (2d Cir. 1979) (reversing $87 million judgment after
20   trial); *Robbins*, 116 F.3d at 1449 (reversing on appeal $81 million jury verdict and
21   dismissing securities action with prejudice); *AUSA Life Ins. Co. v. Ernst & Young*, 39
22   Fed. Appx. 667 (2d Cir. 2002) (affirming district court's dismissal after a full bench
23   trial and earlier appeal and remand); *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355
24   (E.D.N.Y.) (granting defendants' motion for judgment as a matter of law after jury
25   verdict for plaintiffs), *aff'd sub nom. Winkler v. Wigley*, 242 F.3d 369 (2d Cir. 2000).

26   In summary, although Lead Counsel believe that the case is meritorious, their
27   experience has taught them that the risks discussed above can render the outcome of a
28   trial extremely uncertain. *See In re Mfrs. Life Ins. Co. Premium Litig.*, No. MDL

1109, 1998 U.S. Dist. LEXIS 23217, at \*17 (S.D. Cal. Dec. 21, 1998) ("even if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial would yield a greater recovery than the Settlement – which is not at all apparent – there is easily enough uncertainty in the mix to support settling the dispute rather than risking no recovery in future proceedings").  Consideration of the above risks supports approval of the settlement as fair, adequate, and reasonable.

### 3.     Balancing the Certainty of an Immediate Recovery Against the Expense and Likely Duration of Trial Favors Settlement

The immediacy and certainty of a recovery is a factor for the Court to balance in determining whether this proposed settlement is fair, adequate, and reasonable. *E.g.*, *Girsh*, 521 F.2d at 157.  Courts consistently have held that "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein*, 600 F. Supp. at 267; *see also Officers for Justice*, 688 F.2d at 626; *Boyd*, 485 F. Supp. at 616-17; *Bullock v. Adm'r of Estate of Kircher*, 84 F.R.D. 1, 10 (D.N.J. 1979).  Here, counsel secured a substantial and certain recovery for the Settlement Class at a relatively early stage of the litigation, a result consistent with the purposes of the Federal Rules of Civil Procedure.  *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005) (court complimented counsel for promptly resolving litigation).  Absent this settlement, the litigation would have likely dragged on for several more years at considerable expense without the class receiving the immediate and substantial benefit of the settlement, thus creating the possibility that the class would ultimately receive less or no recovery at all.

Here, Defendants have demonstrated a commitment to defend this case through and beyond trial, if necessary, and are represented by well-respected and highly capable counsel.  If not for this settlement, the case would have continued to be fiercely contested by all parties.  The expense and time of continuing litigation would

- 17 -

1  have been substantial.  Assuming the Lead Plaintiff overcame Defendants' attacks on
2  the pleadings, document discovery would need to be started and completed,
3  depositions would have to be taken, experts would have to be designated, and expert
4  discovery conducted.  Defendants' expected motion for summary judgment would
5  have to be briefed and argued, a pre-trial order would have to be prepared, proposed
6  jury instructions would have to be submitted, and motions *in limine* would have to be
7  filed and argued.  Substantial amounts of time would need to be expended in
8  preparing this case for a trial.  Moreover, the trial of this litigation would have been
9  long, expensive, and uncertain and no matter what the outcome, appeals would be
10 virtually assured.  Taking into account the likelihood of appeal, absent this settlement,
11 the litigation would have continued for years, despite the efforts of the Court and the
12 parties to speed the process.  *See In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822,
13 837 (W.D. Pa. 1995) ("It is safe to say, in a case of this complexity, the end of that
14 road might be miles and years away.").  All of the foregoing would have delayed the
15 ability of the class to recover for several years.  Settlement at this juncture results in
16 an immediate and certain recovery, without the attendant risk, expense, and delay of
17 trial and post-trial litigation.

18      As the Ninth Circuit has made clear, the very essence of a settlement agreement
19 is compromise, "'a yielding of absolutes and an abandoning of highest hopes.'"
20 *Officers for Justice*, 688 F.2d at 624 (citation omitted).

21      "Naturally, the agreement reached normally embodies a compromise; in
22      exchange for the saving of cost and elimination of risk, the parties each
23      give up something they might have won had they proceeded with
24      litigation . . . ."

25 *Id.* (citation omitted); *Ellis*, 87 F.R.D. at 19 (as a *quid pro quo* for not having to
26 undergo the uncertainties and expenses of litigation, the plaintiffs must be willing to
27 moderate the measure of their demands).  Accordingly, the fact that the class
28 potentially could have achieved a greater recovery after trial does not preclude the

- 18 -

Court from finding that the settlement is within a "range of reasonableness" that is appropriate for approval. *E.g.*, *Warner Commc'ns*, 618 F. Supp. at 745.

### D.   The Parties Have Engaged in Sufficient Pretrial Discovery and Proceedings to Identify the Strengths and Weaknesses of Their Cases

The stage of the proceedings and the amount of discovery completed – is another factor which the courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit has held that "'in the context of class action settlements, "formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement.'" *Mego Fin.*, 213 F.3d at 459 (citations omitted).

Although the settlement comes at a relatively early stage of the litigation, foreclosing the extraordinary expense of protracted discovery, trial preparation, and the burden to the Court of extended and complex litigation, both the knowledge of Lead Counsel and the proceedings themselves have reached a stage where an intelligent evaluation of the litigation and propriety of settlement could be made. Lead Counsel were able to conduct significant informal discovery and investigation through witness interviews on the matters alleged, even though formal discovery was stayed pursuant to the PSLRA. Lead Counsel identified 96 potential witnesses, including numerous former Basin employees, and interviewed 8 of those witnesses. Lead Counsel conferred with a damages consultant on materiality, loss causation, and damages. The parties also participated in mediation where the strengths and weaknesses of the parties' respective claims and defenses were fully explored. In addition, the parties had fully briefed Defendants' motions to dismiss, which further highlighted the factual and legal issues in the litigation. Thus, the parties reached an agreement to settle the litigation at a point when they had an informed understanding of the legal and factual issues surrounding the case. *See Mego Fin.*, 213 F.3d at 459.

- 19 -

1  Having sufficient information to properly evaluate the case, Lead Counsel settled the
2  litigation on terms favorable to the Settlement Class without the substantial expense,
3  risks, uncertainty, and delay of continued litigation.

### E. The Recommendations of Experienced Counsel Favor Approval of the Settlement

6  "'Great weight is accorded to the recommendation of counsel, who are most
7  closely acquainted with the facts of the underlying litigation.'" *Nat'l Rural*, 221
8  F.R.D. at 528 (citation omitted).

9  Here, Lead Counsel, who are actively involved and experienced in complex
10 federal civil litigation, have weighed all of the relevant factors and have concluded
11 that the settlement is a favorable result that is in the best interest of the Settlement
12 Class. Where, as here, the settlement is the product of serious, informed, and non-
13 collusive negotiations, "'the trial judge . . . should be hesitant to substitute its own
14 judgment for that of counsel.'" *Id.* (citations omitted). *See also Kirkorian v. Borelli*,
15 695 F. Supp. 446, 451 (N.D. Cal. 1988) ("The recommendation of experienced
16 counsel carries significant weight in the court's determination of the reasonableness of
17 the settlement."); *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488
18 (E.D. Pa. 1985); *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in
19 the case approved the settlement after hard-fought negotiations is entitled to
20 considerable weight").

### F. The Risks of Maintaining the Class Action Through Trial Support the Settlement

23 This factor also supports the settlement. Here, a class had not yet been
24 certified. Therefore, risk existed that the Court would not certify the class as defined.
25 In addition, even if a class were certified upon Lead Plaintiff's motion (which
26 Defendants would certainly contest), there would be no assurance of maintaining this
27 status through trial as courts may exercise their discretion to re-evaluate the
28 appropriateness of class certification at any time.

- 20 -

1 **IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

2        Lead Plaintiff also seeks approval of the Plan of Allocation of the settlement
3 proceeds (the "Plan"). The Plan was set forth in the Notice mailed to Settlement Class
4 Members. Distribution under the Plan will reasonably pay the settlement proceeds to
5 those Settlement Class Members who suffered economic losses as a result of the
6 alleged fraud, as opposed to losses caused by market, industry or other non-fraud
7 related company specific factors. Assessment of a plan of allocation in a class action
8 under Federal Rule of  Civil Procedure 23 is governed by the same standards of
9 review applicable to the settlement as a whole – the plan must be fair and reasonable.
10 *See Ikon*, 194 F.R.D. at 184; *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir.
11 1992). District courts enjoy "broad supervisory powers over the administration of
12 class-action settlements to allocate the proceeds among the claiming class members . .
13 . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re
14 Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).

15        The objective of a plan of allocation is to provide an equitable basis upon which
16 to distribute the settlement fund among eligible class members. Thus, numerous
17 courts have approved distribution plans that allocate the settlement proceeds according
18 to the relative strengths and weaknesses of the various claims. *See Warner
19 Commc'ns*, 618 F. Supp. at 745; *Weinberger*, 698 F.2d at 78. Thus, "if one set of
20 claims had a greater likelihood of ultimate success than another set of claims, it is
21 appropriate to weigh 'distribution of the settlement . . . in favor of plaintiffs whose
22 claims comprise the set' that was more likely to succeed." *In re "Agent Orange"
23 Prod. Liab. Litig.*, 611 F. Supp. 1396, 1411 (E.D.N.Y. 1985) (quoting *In re
24 Corrugated Container Antitrust Litig.*, 643 F.2d 195, 220 (5th Cir. 1981)), *aff'd in
25 part and rev'd in part on other grounds*, 818 F.2d 179 (2d Cir. 1987). Moreover,
26 there is no requirement that a settlement must benefit all class members equally. *See
27 Mego Fin.*, 213 F.3d at 461; *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th

28

1 | Cir. 1999) (upholding distribution plan where class members received different levels
2 | of compensation and finding that no subgroup was treated unfairly); *S.C. Nat'l Bank v.*
3 | *Stone*, 749 F. Supp. 1419, 1437 (D.S.C. 1990) (approving settlement where some class
4 | members did not share in recovery).   An allocation formula need only have a
5 | reasonable, rational basis, particularly if recommended by "experienced and
6 | competent" class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993);
7 | *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

8 |     Here, the Plan was developed by Lead Plaintiff's damages consultant and in-
9 | house economic specialist and reflects an assessment of the damages that the Lead
10 | Plaintiff contends could have been recovered under the theories asserted in the case.
11 | Lead Counsel believe that the Plan will result in a fair and equitable distribution of the
12 | proceeds among Settlement Class Members who submit valid claims and, thus, it
13 | should be approved.

14 | **V.   CONCLUSION**

15 |     The settlement here is a very good result, given the presence of skilled counsel
16 | for all parties, the mediator-assisted settlement negotiations, the considerable risk,
17 | expense, and delay if the litigation were to continue, the financial condition of Basin,
18 | and the certain and immediate benefit of the settlement to Members of the Settlement
19 | Class.   In addition, the Plan tracks the theory of damages asserted by the Lead

1  Plaintiff and is necessarily fair, reasonable, and adequate.   Therefore, the Lead

2  Plaintiff respectfully requests this Court to approve the settlement of this litigation and

3  the Plan as fair, reasonable, and adequate.

4  DATED:  July 16, 2009                              Respectfully submitted,

5                                                     COUGHLIN STOIA GELLER
                                                         RUDMAN & ROBBINS LLP
6                                                     JONATHAN E. BEHAR
                                                     EX KANO S. SAMS II
7                                                     MICHAEL F. GHOZLAND
                                                     9601 Wilshire Blvd., Suite 510
8                                                     Los Angeles, CA  90210
                                                     Telephone:  310/859-3100
9                                                     310/278-2148 (fax)

10                                                    COUGHLIN STOIA GELLER
                                                         RUDMAN & ROBBINS LLP
11                                                    JOY ANN BULL
                                                     X. JAY ALVAREZ

12

13
                                                     _____s/ Joy Ann Bull_____
14                                                            JOY ANN BULL

15                                                   655 West Broadway, Suite 1900
                                                     San Diego, CA  92101
16                                                   Telephone:  619/231-1058
                                                     619/231-7423 (fax)

17                                                   Counsel for Lead Plaintiff

18  S:\Settlement\Basin Water.set\BRF SETTLEMENT 00060625.doc

19

20

21

22

23

24

25

26

27

28

1

<u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on July 16, 2009, I electronically filed the foregoing with

3 the Clerk of the Court using the CM/ECF system which will send notification of such

4 filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and

5 I hereby certify that I have mailed the foregoing document or paper via the United

6 States Postal Service to the non-CM/ECF participants indicated on the attached

7 Manual Notice List.

8      I certify under penalty of perjury under the laws of the United States of America

9 that the foregoing is true and correct.  Executed on July 16, 2009.

10

11

                  s/ JOY ANN BULL

12                   JOY ANN BULL

13                   COUGHLIN STOIA GELLER
                        RUDMAN & ROBBINS LLP

14                   655 West Broadway, Suite 1900
                  San Diego, CA  92101-3301

15                   Telephone: 619/231-1058
                  619/231-7423 (fax)

16

17                   E-mail:     Joyb@csgrr.com

18

19

20

21

22

23

24

25

26

27

28

24

# Mailing Information for a Case 2:07-cv-08359-GW-FFM

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jonathan E Behar**
  jbehar@csgrr.com,aromero@csgrr.com

- **Joy Ann Bull**
  joyb@csgrr.com,jstark@csgrr.com

- **Sean Kennedy Collins**
  scollins@csgrr.com

- **Michael F Ghozland**
  mghozland@csgrr.com

- **Michael J Hartley**
  michael.hartley@alston.com,melinda.montero@alston.com

- **Catherine J Kowalewski**
  katek@csgrr.com

- **Teodora Manolova**
  tmanolova@orrick.com

- **Darren J Robbins**
  e_file_sd@csgrr.com

- **Scott H Saham**
  scotts@csgrr.com

- **Ex Kano S Sams , II**
  exkanos@csgrr.com,keagen@csgrr.com

- **Michael C Tu**
  mtu@orrick.com

- **Daniel J Tyukody, Jr**
  dtyukody@orrick.com

- **David C Walton**
  davew@csgrr.com,e_file_sd@csgrr.com

## Manual Notice List

25

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Regina A Sandler
Coughlin Stoia Geller Rudman and Robbins LLP
9601 Wilshire Boulevard  Suite 510
Los Angeles, CA 90210

Alfred G Yates                              , Jr
Law Offices of Alfred G. Yates Jr.
519 Allegheny Building
429 Forbes Avenue  Suite 519
Pittsburgh, PA 15219
```

26